

U.S. Department of Justice

*United States Attorney*
*District of New Jersey*

___

*George M. Barchini*           *970 Broad Street, 7th floor*        *Direct Dial: (973) 297-2085*
*Assistant United States Attorney*    *Newark, New Jersey 07102*      *george.barchini@usdoj.gov*

December 17, 2025

**Via ECF**

The Honorable Michael A. Shipp
United States District Judge
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

         Re:    United States v. David Butler
                 Crim. No. 23-828 (MAS)

Dear Judge Shipp:

      Please accept this letter brief in lieu of a more formal opposition to Defendant David Butler's ("Butler" or the "Defendant") motion to withdraw his guilty plea (the "Motion"). *See* ECF No. 66. Butler claims in his Motion that his decision to enter a plea agreement with the Government, and subsequently plead guilty to certain offenses, was not made voluntarily or intelligently, because of ineffective assistance by his former attorney, Timothy M. Donohue, Esq. Butler further claims that the Government would not be prejudiced by the withdrawal of his guilty plea. Buttler's claims are contradicted by the clear record in this case. These bald assertions also appear, unfortunately, to reflect a mistaken and misguided belief that withdrawing from the Plea Agreement will reduce Butler's sentencing exposure. In reality, Butler's withdrawal of his guilty plea, made under the protections of a plea agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, would significantly increase Butler's sentencing exposure.

      Butler has failed to meet his heavy burden of demonstrating a fair and just reason for the withdrawal of his guilty plea. He has neither asserted his innocence to the charges to which he pled guilty nor adequately demonstrated that his former counsel's conduct amounts to a viable claim of ineffective assistance of counsel. Moreover, Butler has not shown that his former counsel's conduct caused him to forego a jury trial and admit guilt. Indeed, Butler confirms in his Motion that he still wishes to plead guilty to the same offenses. *See* ECF No. 66-2, Certification of Defendant David Butler, at ¶ 4 ("Counts 2, 3 and 4 charge me with possession of CDS

on those defined dates with intent to distribute same. Those charges I still wish to enter a guilty plea."). Additionally, and contrary to Butler's assertions, the Government would indeed be prejudiced by the withdrawal of Butler's guilty plea. Therefore, Butler's motion to withdraw his guilty plea should be denied.

## I. Statement of Facts and Procedural History

### A. Butler Was Charged in a Four-Count Indictment.

On October 16, 2023, a federal grand jury sitting in Newark returned a four-count Indictment charging Butler with conspiracy to distribute methamphetamine, heroin, phencyclidine, and oxycodone, contrary to 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(B), and (b)(1)(C), in violation of 21 U.S.C. § 846 (Count One); distribution and possession with intent to distribute phencyclidine and oxycodone, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count Two); distribution and possession with intent to distribute phencyclidine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count Three); and distribution and possession with intent to distribute phencyclidine and oxycodone, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count Four). ECF No. 33.

### B. Butler Pled Guilty to Counts Two, Three, and Four of the Indictment.

On or about May 22, 2024, Butler and his prior counsel, Timothy M. Donohue, Esq., signed a written plea agreement extended to Butler by the Government (the "Plea Agreement"). *See* ECF No. 55. The Plea Agreement provided, among other things, that Butler would plead guilty to Counts Two, Three, and Four of the Indictment, and that the Government would dismiss Count One of the Indictment if Butler fully complied with the terms of the Plea Agreement. *See id.*, at 1. The Plea Agreement contained a Schedule A that included the following factual stipulations:

- From in or around April 2020 through and including May 2023, Butler conspired with others to distribute and possess with intent to distribute controlled substances, the total quantity of which was at least 3,000 but less than 10,000 kilograms of converted drug weight.

- On or about February 21, 2023, in Newark, New Jersey, Butler knowingly and intentionally attempted to ship to another individual a parcel from the Newark Main Post Office containing 12.53 grams of a substance containing phencyclidine and forty-three (43) 10 mg tablets of a substance containing oxycodone hydrochloride to an address in Jonesboro, Georgia.

- On or about March 22, 2023, in East Orange, New Jersey, Butler knowingly and intentionally attempted to ship to another individual a parcel from the

- East Orange Post Office containing 25.18 grams of a substance containing phencyclidine to an address in Atlanta, Georgia.

- On or about April 11, 2023, in Newark, New Jersey, Butler knowingly and intentionally attempted to ship to another individual a parcel from the South Station Post Office in Newark, New Jersey containing 23.54 grams of a substance containing phencyclidine and 440 grams[1] of oxycodone hydrochloride to an address in Atlanta, Georgia.

*See id.*, at Schedule A. The parties entered the Plea Agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, by which the parties stipulated to a sentence within the range of 84 to 108 months' imprisonment, followed by three years of supervised release. *Id.* at 1. The Plea Agreement also expressly established that "[i]f the Court defers a decision to accept the plea agreement until the Court has reviewed the presentence report pursuant to Rule 11(c)(3)(A), BUTLER will not move to withdraw his guilty plea unless and until the Court rejects the plea agreement." *See id.*, at 2. The Plea Agreement was signed by attorneys for the Government, Butler, and his former counsel. *Id.*, at 8. Above Butler's signature was the following affirmation:

> I have received this letter from my attorney, Timothy M. Donohue, Esq. I have read it. My attorney and I have reviewed and discussed it and all of its provisions, including those addressing the charges, sentencing, stipulations (including the attached Schedule A), waiver, forfeiture, and immigration consequences. I understand that this plea agreement is made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), and I accept those terms. I understand this letter fully and am satisfied with my counsel's explanations. I accept its terms and conditions and acknowledge that it constitutes the plea agreement between the parties. I understand that no additional promises, agreements, or conditions have been made or will be made unless set forth in writing and signed by the parties. I want to plead guilty pursuant to this plea agreement.

*Id.*

Butler and his prior counsel, Mr. Donohue, reviewed and discussed an Application for Permission to Enter Plea of Guilty, which Butler ultimately signed under penalty of punishment on or about June 5, 2024 (the "Rule 11 Application"). ECF No. 54. The Rule 11 Application signed by Butler contained numerous representations confirming the knowing and voluntary nature of Butler's guilty plea.

---

[1] This was a typographical error corrected through factual basis questions on the record at the plea hearing.

On June 5, 2024, the Court convened a change of plea hearing. *See* ECF No. 53; ECF No. 66-2, Exhibit A (hereinafter, "Plea Hearing Tr."). At the plea hearing, the Court engaged Butler in a thorough colloquy regarding his decision to enter a plea of guilty. For example, during the colloquy, Butler confirmed that he could read and write English, that he had fully discussed the charges and the case with Mr. Donohue, and that Butler was "fully satisfied with the advice given to [him] in this case by [his] attorney." *See* Plea Hearing Tr., at 4:6-25. The Court also confirmed that Butler understood all of the questions on the Rule 11 Application and signed the form voluntarily. *See id.* at 12:11-23.

The Court, along with the assistance of the Government, examined the parameters of the Plea Agreement at length with Butler during the plea hearing. *See id.,* at 7:5-12:10. For example, the Court confirmed, "with the assistance of your attorney that you understand each and every term of that agreement," to which Butler responded, "Yes." *Id.,* at 9:7-10. Butler then confirmed that no one had made "any other or different promises or assurances to [him] of any kind to induce [him] to plead guilty in this case." *Id.,* at 9:11-14. The Court also explained Butler's right to a trial and the rights he would have if he proceeded to trial. *Id.,* at 5:4-7:2. At each step, Butler confirmed that he understood his rights. *Id.* And during a factual basis colloquy, Butler expressly admitted his guilt to the charged offenses. *Id.* at 12:24-16-12. At no point did Butler waiver from his admission of guilt. *See id.*

The Court ultimately found that Butler was "fully competent and capable of entering an informed plea" and "aware of the nature of the charges and the consequences of the plea," and Butler's guilty plea was "knowing and voluntary" and "supported by an independent basis in fact." *Id.* at 16:13-19. The Court deferred its decision to accept the Rule 11(c)(1)(C) Plea Agreement pending an opportunity to review the final Presentence Investigation Report (the "PSR"), which Butler would have the ability to review and object to, as appropriate, in advance of sentencing. *Id.* at 16:20-17:9.

### C. Butler Was Appointed New Counsel and Now Claims Ineffective Assistance By His Former Counsel.

Butler's sentencing hearing was scheduled for December 3, 2024. *See id.,* at 17:10-11; *see also* ECF No. 53. It was subsequently adjourned to January 23, 2025, and then again adjourned to April 10, 2025. Following a status conference held on April 10, 2025, Butler was appointed new counsel. *See* ECF No. 64. The Court subsequently contacted the parties to inquire about scheduling the sentencing hearing for October 9, 2025. However, on September 26, 2025, the Defendant filed the instant Motion. ECF No. 66. Among other claims in his Motion, Butler claims that he received ineffective assistance of counsel and seeks to withdraw his guilty plea. *See id.*

## II. Argument

### A. The Defendant Is Not Entitled to Withdraw His Guilty Plea.

The Defendant argues that he should be permitted to withdraw his guilty plea because he allegedly received ineffective assistance of counsel by Mr. Donohue, Butler's former counsel. Butler apparently premises his ineffective assistance claims on three primary arguments: (1) Butler's former counsel allegedly failed to advise Butler regarding the terms of his Plea Agreement; (2) Butler's former counsel allegedly failed to advise Butler regarding the consequences of his guilty plea; and (3) Butler relied on the advice of his former counsel in responding affirmatively, but allegedly not voluntarily or intelligently, to questions posed at his plea hearing. See ECF No. 66, at 1, 4-7. Butler has neither credibly asserted his innocence to the charges, nor adequately demonstrated that his former counsel's conduct amounts to a claim of ineffective assistance of counsel. Butler has also not argued that his former counsel's conduct caused him to admit guilt or that he would have persisted in his right to a trial but for counsel's conduct. Furthermore, the withdrawal of Butler's guilty plea would cause substantial prejudice to the Government. Because Butler has failed to meet his heavy burden of demonstrating a fair and just reason for the withdrawal of his guilty plea, the Court should deny his motion.

"Once accepted, a guilty plea may not automatically be withdrawn at a defendant's whim." *United States v. James*, 928 F.3d 247, 253 (3d Cir. 2019) (quoting *United States v. Brown*, 250 F.2d 811, 815 (3d Cir. 2001)). Rather, a defendant may not withdraw a guilty plea before sentencing unless he "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B); *see also United States v. Siddons*, 660 F.3d 699, 703 (3d Cir. 2011) (explaining defendant "bears a substantial burden of showing a fair and just reason for the withdrawal of his plea") (internal quotation marks and citation omitted). In assessing whether a defendant has made such a showing, a court must consider three factors: "(1) whether the defendant asserts his innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal." *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003). The defendant bears a "substantial" burden of demonstrating each of those factors. *James*, 928 F.3d at 253 (quoting *Jones*, 336 F.3d at 252). The "withdrawal of a guilty plea is inherently in derogation of the public interest in finality and the orderly administration of justice." *United States v. Horne*, 987 F.2d 833, 837 (D.C. Cir. 1993); *see also Hill v. Lockhart*, 474 U.S. 52, 58 (1985). "A shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the expense, difficultly, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty." *Jones*, 336 F.3d at 252. And, if a defendant fails to meet the substantial burden regarding the first two factors, the Government need not show prejudice. *United States v. Shumaker*, 475 Fed.App'x 817, 821 (3d Cir. 2012) (citing *United States v. Martinez*, 785 F.2d 111, 116 (3d Cir. 1986)). A court may rule on a

motion to withdraw a guilty plea without an evidentiary hearing "if the record in the proceedings leading to the plea shows compliance with rule 11, or if it shows conclusively that the plea was voluntarily, knowingly and intelligently made." *United States v. Jasper*, 481 F.2d 976, 978-979 (3d Cir. 1973).

Courts in this circuit have repeatedly held that the parties cannot walk away from a plea pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure if a sentence ends up being more or less than the parties expected when they signed the plea. *See United States v. Feliz*, No. CR 14-327, 2019 WL 6496932, at *23 (D.N.J. Dec. 3, 2019), *aff'd*, No. 20-3314, 2022 WL 16844718 (3d Cir. Aug. 31, 2022) (holding that despite unanticipated changes in sentencing law, the Court would not allow the defendant to withdraw the Rule 11(c)(1)(C) plea); *United States v. Agurs*, No. 12-CR-100, 2014 WL 3735584, at *5 (W.D. Pa. July 28, 2014), aff'd, 629 F. App'x 288 (3d Cir. 2015) (holding that defendant could not withdraw 11(c)(1)(C) plea even though the parties believed he would be a career offender, but it turns out he was not); *United States v. Neal Prence*, No. 13-CR-227, 2017 WL 2573871, at *2 (W.D. Pa. June 14, 2017) (defendant could not withdraw Rule 11(c)(1)(C) plea because the tax loss was less than the stipulated amount in the plea); *see also United States v. Vonsander*, 227 F. App'x 192, 194 (3d Cir. 2007) (holding that a defendant could not withdraw a regular plea when his Guidelines ended up much higher than he expected).

### B. Butler Has Failed to Credibly Assert His Innocence.

Under the first factor a court must consider in assessing whether to allow a defendant to withdraw a guilty plea, the relevant inquiry is whether the defendant has *credibly* asserted his innocence. *Jones*, 336 F.3d at 252-53; *see also James*, 928 F.3d at 255 (citing prior settled precedent holding that where a defendant asserts legal innocence in support of a motion to withdraw his guilty plea, the defendant "must present a *credible* claim of legal innocence.") (emphasis in original). "Bald assertions of innocence are insufficient to permit a defendant to withdraw his guilty plea." *Jones*, 336 F.3d at 252. Instead, a defendant's assertion of innocence "must be buttressed by facts in the record that support a claimed defense." *Id.*

Here, Butler has not even attempted to assert his actual innocence of the charges to which he pled guilty. *See United States v. Rivera*, 62 F.4th 778, 788 (3d Cir. 2023) (affirming denial of defendant's motion to withdraw Rule 11(c)(1)(C) plea where "[d]espite doing so at the District Court, [defendant] does not assert his innocence on appeal"). To the contrary, Butler *reaffirmed* in a sworn declaration attached to the instant Motion that, with respect to Counts Two, Three, and Four of the Indictment—which are, in fact, the only charges to which he has pled guilty— "[t]hose charges I still wish to enter a guilty plea." ECF No. 66-2, Certification of Defendant David Butler, at ¶ 4 (hereinafter, "Affidavit"). Indeed, Butler admitted to the underlying facts of the offenses during the June 5, 2024, plea hearing and never stated or suggested he might be innocent of those offenses. Butler's factual admissions at the plea hearing, which the Court found knowing, intelligent, and

- 6 -

voluntary, "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). And in a written statement to Probation following the plea hearing, Butler confessed that "[a] friend I knew from childhood told me I could make some money if I shipped some drugs to him in Georgia. Unfortunately, I agreed to help him out. I knew it was wrong and I regret it. But I accept responsibility for what I did." PSR ¶ 57. Butler has, therefore, consistently maintained his guilt to Counts Two, Three, and Four of the Indictment, from his signing the Plea Agreement, to his signing and submission of the Rule 11 Application, in answers to questions posed by the Court and to factual basis questions posed by the Government during his plea hearing, in communications with Probation, and even now through his Motion to withdraw his plea agreement.

Butler has only attempted to assert his actual innocence of Count One of the Indictment—a charge to which Butler has not pled guilty and which the Government agreed to dismiss[2] if Butler fully complied with the terms of the Plea Agreement. *See* ECF No. 55, at 1; *see also* Affidavit, at ¶ 3. But Butler's failure to provide the Court with any proof of his alleged innocence is fatal to his request to withdraw his guilty plea as to Counts Two, Three and Four, especially in light of his repeated, unwavering admissions of guilt as to those charges. *United States v. Monac*, 120 Fed. App'x 924, 927 (3d Cir. 2005) (holding that "proof of *factual* innocence is required" to withdraw guilty plea) (emphasis in original). Simply put, Butler has articulated no claims of innocence with respect to the charges to which he pled guilty.

### C. Butler Has Failed to Provide Strong Reasons for Withdrawing His Guilty Plea.

The second factor a court must consider in assessing whether a guilty plea may be withdrawn is whether the defendant has proffered "sufficient reasons to explain why contradictory positions were taken before the district court and why permission should be given to withdraw the guilty plea and reclaim the right to trial." *James*, 928 F.3d at 257.

Here, Butler asserts that he should be permitted to withdraw his guilty plea because it was the product of his former counsel's purported ineffective assistance. *See* ECF No. 66, at 1, 4-7. Specifically, Butler claims that his former counsel allegedly failed to advise Butler regarding the terms of his Plea Agreement, the consequences of his guilty plea, including the impact of "relevant conduct" on the sentencing process, and apparently advised Butler to respond affirmatively, but allegedly not voluntarily or intelligently, to questions posed at his plea hearing. *See* ECF No. 66, at 1, 4-7. Although the Government has not probed the veracity of these allegations

---

[2] The Government maintains that it could prove Count One beyond a reasonable doubt if this matter were to have proceeded to trial.

directly with former counsel for Butler, the record starkly contradicts Butler's eleventh-hour assertions.

### 1. Butler's Former Counsel Appears to Have Fully Advised Him Regarding the Terms of the Plea Agreement.

The Rule 11 Application and extensive colloquy between the Court and Butler at the June 5, 2024, plea hearing reflect that Butler's former counsel fully advised Butler regarding the terms of the Plea Agreement. As a preliminary matter, in his signed Rule 11 Application, Butler averred that he "was satisfied that [he] had enough time to discuss the matter" with his former counsel, and that "I AM SATISFIED WITH THE ADVICE AND HELP MY LAWYER HAS GIVEN ME." ECF No. 54, at ¶¶ 3, 42. Butler confirmed that he had entered into a Plea Agreement with the Government that "contains stipulations regarding certain facts" and was fully understanding the terms of that Plea Agreement. *Id.* at ¶¶ 36-44. The Rule 11 Application signed by Butler expressly provided that, "I understand that if the judge does not follow one or all of the other terms of the plea agreement, including the stipulations, I will have no right to withdraw my GUILTY plea, even if the disposition of my case may be less favorable than that proposed in the plea agreement." *Id.* at ¶ 41. Indeed, the Court expressly confirmed with Butler at the plea hearing that, "with the assistance of your attorney that you understand each and every term of that agreement," to which Butler responded, "Yes." *See* Plea Hearing Tr., at 9:7-10. And the Plea Agreement states that "[t]his Office and Defendant will stipulate at sentencing to the statements set forth in the attached Schedule A, which is part of this plea agreement." *See* ECF No. 55, at 4.

### 2. Butler's Former Counsel Appears to Have Fully Advised Him Regarding the Consequences of His Guilty Plea.

The Rule 11 Application and extensive colloquy between the Court and Butler at the June 5, 2024, plea hearing also demonstrate that Butler's former counsel fully advised Butler regarding the consequences of his guilty plea, including the impact of the U.S. Sentencing Guidelines, and thus "relevant conduct," on the sentencing process. In his Rule 11 Application, Butler averred that "I have discussed with my attorney how the Sentencing Guidelines might apply to my case," and "I understand that the Court will not be able to determine the sentence for my case until after the Presentence Report has been completed and both I and the Government have had an opportunity to read the report and challenge any facts reported by the probation officer." ECF No. 54, at ¶¶ 28-29. The signed Rule 11 Application established that "I understand that I will have no right to withdraw my plea on the grounds that anyone's prediction as to the Guidelines range or expectation of sentence proves inaccurate." *Id.* at ¶ 33. Butler further asserted through submission of the signed Rule 11 Application that he understood the implications of pleading guilty and waiving his right to trial. *Id.* at ¶¶ 8-22. During the plea hearing, the Court also explained Butler's right to a trial and the rights that he would have if he proceeded

to trial. *See* Plea Hearing Tr.*,* at 5:4-7:2. At each step, Butler confirmed that he understood his rights and the rights that he would be giving up by pleading guilty under the terms of the Plea Agreement. *Id.* And again, Butler responded "Yes," when the Court asked him at the plea hearing: "Do you believe that with the assistance of your attorney that you understand each and every term of that [plea] agreement?" *See* Plea Hearing Tr.*,* at 9:7-10. Additionally, the Plea Agreement stated expressly that "this Office may inform the sentencing judge and the United States Probation Office of: (1) this agreement; and (2) the full nature and extent of BUTLER's activities and *relevant conduct* with respect to this case." ECF No. 55, at 4 (emphasis added).

For his part, Butler's former counsel attested in the Rule 11 Application that "I have explained to the defendant that in imposing sentence, the sentencing judge is required to consider the Sentencing Guidelines, and I have further explained how the Guidelines might apply to this offense and to the defendant." ECF No. 54, at ¶ 7. And at the plea hearing, Butler's former counsel responded affirmatively when asked by the Court whether he "represent[s] that Mr. Butler indicated his understanding of all the questions on the Rule 11 form and that he signed it voluntarily?" *See* Plea Hearing Tr., at 12:20-23.

### 3. Butler's Responses to the Factual Basis Questions Were Knowing and Voluntary, and Only Aided by His Former Counsel.

Butler ambiguously claims in his Motion that, "[r]elying on the advice of his attorney, defendant Butler answered 'yes' to his attorney's questions. Defendant Butler would have never pled guilty had he known the full consequences of his guilty plea, i.e. that his admitting to the relevant conduct of the conspiracy was the same as pleading guilty to the conspiracy." ECF No. 66, at 4. However, Mr. Donahue, Butler's former attorney, did not question Butler on the record at his plea hearing. If this statement is a reference to the factual basis questions posed by the Government at the plea hearing, then the claim is equally meritless. Butler's former counsel helped the parties and the Court navigate the factual basis questions at the plea hearing to ensure that the questions posed were supported by the evidence and that Butler's interests were protected. This is confirmed by the transcript of the plea hearing, which does not indicate any improper coercion or instruction by Butler's former counsel during the factual basis questions or during questioning by the Court. *See* Plea Hearing Tr., at 13:13-16:12. Immediately following the factual basis questions, the Court found that the Defendant's plea was "knowing and voluntary." *Id*. at 16:13-19.

The plea hearing transcript also demonstrates that Butler's former counsel ensured that Butler did not allocate to broader "relevant conduct" or to facts unsupported by the evidence. *See supra* n.1.

### 4. Butler Cannot Show That His Former Counsel's Advice Was Unreasonable or That Butler Was Prejudiced.

To be valid, a guilty plea must be the product of "a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill*, 474 U.S. at 56. "A valid claim of ineffective assistance of counsel can negate the intelligent and voluntary nature of a guilty plea and provide a basis for withdrawing it." *James*, 928 F.3d at 258. However, "[a] court will permit a defendant to withdraw a guilty plea based on ineffective assistance of counsel only if (1) the defendant shows that his attorney's advice was under all the circumstances unreasonable under prevailing professional norms; and (2) the defendant shows that he suffered 'sufficient prejudice' from his counsel's errors." *Jones*, 336 F.2d at 253-54. To establish prejudice under the second prong in this context, a defendant must show that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

Butler has not satisfied his burden because he fails to show that former counsel provided advice that was, under all the circumstances, unreasonable under prevailing professional norms, and that Butler suffered "sufficient prejudice" from former counsel's errors. As a preliminary matter, the June 5, 2024, plea hearing afforded Butler ample opportunity to ensure that Butler fully comprehended the parameters of the Plea Agreement and was receiving effective counsel from his former attorney. The Court confirmed expressly with Butler "with the assistance of your attorney that you understand each and every term of that agreement." *Id.,* at 9:7-10. Butler averred throughout the Rule 11 Application that he had sufficient time to discuss the matter with his former counsel and that he was satisfied with the work of his former counsel. *See*, *e.g.*, ECF No. 54, at ¶¶ 3, 42.

It appears that Butler's primary complaint is that, according to Butler, "[w]hat was not explained to me and what I did not realize is that in Schedule A 1(a) the 'relevant conduct' stated was in essence me pleading guilty to the conspiracy count." *See* Affidavit, at ¶ 7. As a preliminary matter, the Plea Agreement—which Butler confirmed that he fully understood—states that "[t]he stipulations in Schedule A are offered as recommendations to the Court," and "[b]oth parties understand that the sentencing judge and the United States Probation Office are not bound by those stipulations and may make independent factual findings and may reject any or all of the parties' stipulations." *See* ECF No. 55, at 4-5. The Plea Agreement clarifies, "[n]or do these stipulations restrict the parties' rights to respond to questions from the Court and to correct misinformation that has been provided to the Court." *Id.* at 5. The Plea Agreement also expressly states that "a determination that a Schedule A stipulation is not binding shall not release the parties from any other portion of this agreement, including any other Schedule A stipulation." *See* ECF No. 55, at 5. Certainly, Butler withdrawing his guilty plea would be a drastic response to his claimed, new-found understanding of the Plea Agreement.

Respectfully, the Government presumes that what is driving Butler's attempt to walk back the Plea Agreement is a mistaken belief that the drug weights referenced in Schedule A, Paragraph 1(a), of the Plea Agreement, are increasing his sentencing exposure. What Butler does not seem to understand is that his sentencing exposure is driven chiefly by the fact that he is a career offender, not by drug weights listed in Schedule A, Paragraph 1(a), of the Plea Agreement, and the Plea Agreement artfully negotiated by his former counsel actually limits his sentencing exposure.

The Plea Agreement successfully negotiated by Butler's former counsel pursuant to Rule 11(c)(1)(C) stipulates that Butler receive a sentence within the range of 84-108 months' imprisonment. The stipulated range negotiated between the parties is drastically below the Guidelines range of 151-188 months that, as further discussed below, would likely be applicable if Butler was somehow held responsible for only the drug weights directly tied to Counts Two, Three, and Four, which the Government understands is approximately 284.161 KG of Converted Drug Weight.

Probation correctly found in the final PSR that Butler is a career offender under U.S.S.G. §4B1.1 because Counts Two, Three and Four are controlled substance offenses, and Butler sustained at least two prior convictions for a controlled substance offense. *See* PSR ¶ 86; U.S.S.G. §4B1.1(b)(3). Butler's applicable offense level from the career offender table is 32 because the statutory maximum penalty for Counts Two, Three and Four is 20 years' imprisonment.[3] U.S.S.G. §4B1.1(b)(3). Based upon a criminal history category of VI as a career offender and an offense level of 32, Butler's Guidelines range for Counts Two, Three, and Four—irrespective of any other "relevant conduct"—is 210-262 months' imprisonment. Assuming that Butler received a three-point reduction for acceptance of responsibility under U.S.S.G. §§3E1.1(a) and (b), his resulting Guidelines range would be 151-188 months' imprisonment.

The result is that Butler's former counsel successfully negotiated a Rule 11(c)(1)(C) Plea Agreement with a stipulated range that is significantly below the applicable Guidelines range and, once accepted, restricts the Court's ability to sentence Butler outside the stipulated range. Therefore, as a practical matter, Butler cannot show that his former counsel's performance caused him any actual prejudice.

Butler voluntarily chose to sign the Plea Agreement and proceed with the entry of a guilty plea. Under these circumstances, Butler's decision to plead guilty was the result of "a voluntary and intelligent choice among the alternative courses of action

---

[3] If Butler is held responsible for at least 3,000 KG but less than 10,000 KG of Converted Drug Weight, as supported by the Government's evidence and as stipulated in the Plea Agreement that Butler knowingly and voluntarily signed, this results a base offense level of 32. Accordingly, *regardless* of the total Converted Drug Weight, because Butler is a career offender, his offense level would be 32.

open to the defendant." *Hill*, 474 U.S. at 56. Butler has failed to demonstrate that his former counsel's advice was deficient, or that it caused him to forgo a jury trial and admit guilt. Critically, Butler cannot possibly show that his former counsel's advice was unreasonable under prevailing professional norms or that Butler suffered prejudice from any of his counsel's errors because his former counsel negotiated a plea agreement that effectively limits the impact of any "relevant conduct" and caps Butler's sentencing exposure significantly below the otherwise applicable Guidelines range. Thus, Butler's self-serving claims concerning his misunderstanding regarding the application of terms of his Plea Agreement provides no support for the withdrawal of his guilty plea. The Court should deny Butler's Motion.

### D. The Government Would Be Prejudiced by the Withdrawal of Butler's Guilty Plea.

The third factor that a court must consider in assessing whether a guilty plea may be withdrawn is whether the Government would be prejudiced by the withdrawal of the defendant's guilty plea. *Jones*, 336 F.3d at 252. "However, the Government need not show such prejudice when a defendant has failed to demonstrate that the other factors support a withdrawal of the plea." *Jones*, 336 F.3d at 255; *accord Rivera*, 62 F.4th at 788 ("Because Rivera failed to meaningfully reassert his innocence or provide a strong reason for withdrawing his plea, the Government was not required to show prejudice."). So here, the Court is not required to evaluate the prejudice to the Government because Butler has failed to demonstrate that the other factors favor granting his motion.

Nevertheless, clear prejudice can be shown. By the time Butler expressed a desire to plead guilty and signed the written plea agreement on May 22, 2024, the Government's witnesses and attorneys were already preparing to proceed to trial on July 9, 2024. Certainly, the Government would be prejudiced by the withdrawal of the Defendant's guilty plea if, nearly a year and a half later, it were required to begin to prepare for trial all over again and arrange for its witnesses to appear in Court and testify. *See United States v. Fuller*, 311 F. App'x 550, 553 (3d Cir. 2009) ("We note however, that this eleventh hour plea change occurred eight months after Fuller's initial guilty plea, and a delay of several months can induce the Government to relax its evidence-gathering efforts in reliance on the guilty plea. [] This could be prejudicial." (internal citation omitted)).

Although the Government need not show prejudice here because the Defendant has failed to adequately demonstrate the other factors, there would be prejudice to the Government if the Defendant were permitted to withdraw his guilty plea. Therefore, this factor, too, weighs against allowing the Defendant to withdraw his guilty plea.

### III. Conclusion

      For all the foregoing reasons, the United States respectfully requests that the Defendant's motion to withdraw his guilty plea be denied.

                                        Respectfully submitted,

                                        TODD BLANCHE
                                        United States Deputy Attorney General

                                        PHILIP LAMPARELLO
                                        Senior Counsel

                            By:    */s/ George M. Barchini*
                                      George M. Barchini
                                      Assistant U.S. Attorney

cc:    Vincent J. LaPaglia (via ECF)